UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAN MAY YEN,<br><br>  Plaintiff,<br><br>  v.<br><br>KO CHEUK YIN,<br><br>  Defendant. | CASE NO. 2:24-cv-01565-BAT<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Plaintiff Tan May Yen, d/b/a Glittery Craft's motion for summary judgment against Defendant Ko Cheuk Yin for infringement of Plaintiff's copyrighted work, Excel Shortcut Keys Mouse Pad (the "Work"). Dkt. 26. Having considered the parties' briefing, supporting documents, and balance of the record, the Court denies Plaintiff's motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on October 1, 2024 (Dkt. 5) and Defendant filed an Answer on November 19, 2024 (Dkt. 12). On November 20, 2024, the Court issued an Order Setting Pretrial Deadlines, setting the discovery deadline as May 19, 2025. Dkt. 19.

On November 28, 2024, Plaintiff moved for preliminary injunction (Dkt. 22), which the Court denied. Dkt. 32. The Court also denied Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 24) and Motion to Dismiss Plaintiff's Copyright Registration (Dkt. 28). On January 9, 2025, Defendant filed a "Second Counterclaim Pattern of False Infringement

1  Reports." Dkt. 35. Plaintiff's Motion to Dismiss the Second Counterclaim (Dkt. 40) will be
2  addressed separately.
3        Plaintiff filed the motion for summary judgment on December 19, 2024. Dk. 26. In
4  response, Defendant requested an extension pending completion of discovery pursuant to
5  Fed.R.Civ.P. 56(d). Dkt. 31. Plaintiff replied and identified documents submitted to Defendant.
6  Dkt. 36. The Court directed Defendant to file a Surreply limited to the arguments and evidence
7  raised in Plaintiff's Reply and to provide a declaration for relief under Rule 56(d) specifying any
8  discovery he believed was still needed to allow him to properly respond to the summary
9  judgment motion. Dkt. 38. Defendant filed a Surreply on January 26, 2025, but did not include a
10  declaration for relief under Rule 56(d). Dkt. 39. Plaintiff filed her Reply on February 3, 2025.
11  Dkt. 41. At the Court's direction, the parties submitted sworn declarations to which they attached
12  their summary judgment evidence. Dkts. 43 and 44.

13  <center>PARTIES' EVIDENCE</center>

14        Plaintiff is the sole owner of the copyrighted work titled "Excel Shortcut Keys Mouse
15  Pad - Extended Large XL Cheat Sheet Gaming Mousepad" (the "Work"). Dkt. 27, Declaration of
16  Tan May Yen, ¶ 2. Plaintiff attests she created and has maintained exclusive rights to reproduce,
17  distribute, and display the Work. *Id.* Plaintiff registered the Work with the U.S. Copyright Office
18  on June 30, 2024, under Registration No. VA0002411555. *Id.*, Dkt. 26, Ex. A. The Work was
19  first published on January 8, 2024. *Id.*, ¶ 3.
20        Defendant's Excel Shortcuts Mouse Pad product was distributed for sale on Amazon
21  under the brand name "Stalent," ASIN B0D14B9C6V.[1] Dkt. 26, Ex. D. Plaintiff submitted a

---

[1] These "ASIN" identifications referred to by the parties are Amazon reference numbers assigned to products.

Notice of Infringement under the Digital Millennium Copyright Act ("DMCA"), Complaint ID: 15433343311 to Amazon on June 13, 2024, complaining of Defendant's "unauthorized listing" of the Work. *Id.*, Ex. B ("Amazon Complaint"). Relevant portions of the Amazon Complaint are as follows:

> The copied design includes a mouse pad printed with 11 list tables, duplicating the exact arrangement as well as the same 11 heading titles: Editing/Selection, Table/Chart/Object, Navigation, Power Pivot, Pivot Table, Display Dialog/Menu, Data/Functions, Workbook Basics, Formatting, and the two main tables in the center of the mousepad titled "Useful Excel Tricks" and "Useful Excel Formulas.
>
> Furthermore, the seller has replicated our colorful heading titles design, featuring curves on the top left and bottom right corners.
>
> At the bottom of the mouse pad, the seller has also included exercise diagrams, similarly like our design, with 10 distinct white-colored human figures.

*Id.*; *see also*, *Id.*, Ex. H-1 to H-6 (Plaintiff's "side-by-side" comparisons of the Work and Defendant's mousepad).

On June 18, 2024, Defendant submitted a Counter-Notification to Amazon claiming the removal of his mousepad was the result of a mistake or misidentification. *Id.*, Ex. C.

Defendant's current product listing under ASIN B0D14B9C6V remains available for purchase on Amazon. *See* Dkt. 22, Ex. G (screenshot of product taken by Plaintiff on November 5, 2024 (showing Defendant's product sold and manufactured by Stalent under the Stalent brand name). The Court's recent search on Amazon for the product "ASIN B0D14B9C6V," shows Defendant's product sold and manufactured by Stalent under the brand name "Zoolyx", with a "date first available" of November 21, 2023.[2]

Plaintiff claims loss of revenue of $80,519.83, "up to December 18, 2025, as a direct result of Defendant's continued infringement. *Id.*, ¶ 6. Plaintiff submits a "computation of sales

---

[2] *See* www.amazon.com, using search term "ASIN-B0D14B9C6V"; last visited March 7, 2025.

1  records" and a report generated by "Helium 10 xray detailing infringing product sales from May
2  17, 2024 to December 18, 2024." *Id.*, Ex. I-1 to I-3. Plaintiff claims Defendant's alleged
3  infringement of the Work continued after filing of this lawsuit. *Id.*, Ex. J (screenshot of customer
4  surveys after September 2024).

5       According to Defendant, the market was already saturated with products with functional
6  designs like Plaintiff's Work, all offering quick references for Excel shortcuts. Dkt. 43, Affidavit
7  of Ko Cheuk Yin, Ex. A. Defendant contends Plaintiff's use of exercise diagrams in the Work is
8  not original as the diagrams are online stock items which were used in similar mousepads sold on
9  Amazon prior to Plaintiff's launch of the Work in November 2023. *Id.*, Ex. A (B0CDPJ1NFW,
10 B09P4YTM9D, B0CMQ94755, B0CGV638KC, B0CLTSQ7KY, B0DGL9M384,
11 B0CJ2LN7R3).

12      Defendant also contends Plaintiff has demonstrated a pattern of abusing Amazon's
13 reporting system and the DMCA by targeting similar products from other sellers to eliminate
14 competition and submits screenshots of several products suspended due to Plaintiff's complaints
15 but later reinstated when Plaintiff failed to pursue legal action for the alleged infringement. Dkt.
16 43, Ex. C (B0D9YLMW8G, B0DKJ9TJKH, B0DHC8RRTS, B0DGF4RNCQ, B0DHZT4Y8H,
17 B0DGL9M384). Defendant asserts that during the time the products were suspended, the
18 targeted sellers lost sales for 1 to 2 months, while Plaintiff's sales increased. *Id.*, Ex. C at 2, 3, 5.

19 <center>SUMMARY JUDGMENT STANDARD</center>

20      In determining summary judgment, a court applies a burden-shifting analysis. "When the
21 party moving for summary judgment would bear the burden of proof at trial, it must come
22 forward with evidence which would entitle it to a directed verdict if the evidence went
23 uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the

absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348).

## DISCUSSION

Plaintiff asserts she is entitled to summary judgment because she owns a copyright to the Work, the combination of design elements and specific arrangement of the Work is protected by copyright, and Defendant's use of the Work is not fair use because it is not transformative. Dkt.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

26.[3] Defendant denies the allegations and claims he independently created his product relying primarily on publicly available Excel shortcut information. Defendant also contends there are genuine issues of material fact as to Plaintiff's ownership of the Copyright for the Work and as to the originality and creativity of the Work. Dkt. 31.

To present a *prima facie* case of direct infringement, plaintiff must submit evidence of ownership of the allegedly infringed material and violation by the alleged infringer of at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007) (citation omitted).

(1)    Proof of Ownership

Plaintiff submitted evidence of ownership of a copyright for the Work (Excel Shortcut Keys Mouse Pad), U.S. Copyright Registration No. VA0002411555 (first published on January 8, 2024). Dkt. 26, Ex. A. This Certificate constitutes *prima facie* evidence of a valid copyright. *See* 17 U.S.C. § 410(c); *see also S.O.S., Inc.* at 1085.

Defendant contends Plaintiff is not the exclusive author of the work and lacks exclusive rights to the Work because it is a "Work made for Hire." Dkt. 28 at 1-2. The Copyright Act provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). However, if the work is made for hire, "the employer or other person for whom the work was prepared is considered the author ..., and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all the rights in the copyright." 17 U.S.C. § 201(b); *see also*, 17 U.S.C. § 101 (defining "work make for hire").

---

[3] Plaintiff also argues she is entitled to summary judgment on Defendant's Fair Use Defense. *See* Dkt. 12 (Defendant's Answer). The Court does not reach the fair use defense as there are material questions of fact relating to Plaintiff's infringement claim.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

       The Certificate of Registration indicates the author of the Work as "Glittery Craft," the Work as a "work made for hire," Plaintiff as the sole proprietor of Glittery Craft, and Glittery Craft as owner of exclusive rights to the Work. Dkt. 5 at 7-8 (Stamped Certificate of Registration); Dkt. 5 at 3. Plaintiff further alleges she is the sole owner of the copyright in the Work registered under VA0002411555. *Id*. at 4.

       Defendant broadly contends that the "ambiguity surrounding the authorship of the work presents a significant factual dispute …". However, Defendant provides no summary judgment evidence of any such ambiguity and therefore, has failed to demonstrate a genuine issue of material fact as to Plaintiff's ownership in the copyright of the Work.

       (2)    <u>Copying Aspects of Copyrighted Work</u>

       Plaintiff must show that Defendant copied protected elements of the copyrighted work. *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989). The Work and Defendant's product are computer mouse pads featuring functional shortcuts and terms created by Microsoft which are commonly used by the public. Neither Plaintiff nor Defendant created the Excel shortcut keys and commands or the exercise diagram. Plaintiff does not assert copyright ownership in the non-protectible Excel shortcuts, computer terms, or in the exercise diagram, but rather claims copyright protection in *how* she compiled the non-protectible elements. Plaintiff claims "[n]o prior art existed before Plaintiff's Excel shortcut mouse pad that combined 12 multi-color rounded-corner boxes with specific color category-grouping for Excel 13 shortcut keys and the inclusion of exercise diagrams." Dkt. 36 at 1-4. In response, Defendant identifies at least three mouse pads combining these same and/or similar elements, which existed in the marketplace prior to the Work. Dkt. 43, Ex. A.

"As a constitutional matter, copyright protects only those constituent elements of a work that possess more than a *de minimis* quantum of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 363 (1991); *see also Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 636 (9th Cir. 2008). Accordingly, the "court must filter out and disregard the non-protectible [constituent] elements [of a work] in making its substantial similarity determination." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822-23 (9th Cir. 2002); *see also Gray v. Hudson*, 28 F.4th 87, 96 (9th Cir. 2022); *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004) ("[I]t is essential to distinguish between the protected and unprotected material in a plaintiff's work.").

Additionally, "the presumption of validity of the copyright is just that: a presumption that can be rebutted by, for example, a lack of originality or creativity in the purportedly protected work." *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 489 (9th Cir. 2000), *overruled on other grounds by Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); *Satava*, 323 F.3d 805 (artist's glass-in-glass jellyfish sculptures were unprotectable notwithstanding the plaintiff's registration of those works with the Copyright Office, because the works did not contain sufficient originality). In addition, a court must be mindful of the line between protecting original creations "which enrich[] our culture by giving artists a financial incentive to create" and not cheat[ing] the public domain" from the "use of ideas that properly belong to us all." *Satava*, 323 F.3d at 813.

Although the amount of creative input by the author required to meet the originality standard is low, it is not negligible. *See Feist*, 499 U.S. at 362, 111 S.Ct. 1282. There must be something more than a "merely trivial" variation, something recognizably the artist's own. *Three Boys Music*, 212 F.3d at 489.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8

As previously noted, Plaintiff claims copyright protection in how she compiled the non-protectable elements of the mousepad. She asserts that her combination of 12 multi-color rounded corner boxes using a particular color grouping for 13 Excel shortcut keys with an exercise diagram meets the originality standard. Plaintiff also maintains no prior art existed with this combination of elements. Dkt. 36 at 2. In support, Plaintiff presents emails (in July 2023 through November 2023) between herself and her "illustrator personnel" purporting to detail her "design process." Dkt. 44-8, Ex. I. In these emails, Plaintiff provided instruction to her illustrator regarding the size of the mousepad; the addition of more Excel shortcuts and formulas; font sizes, colors, the arrangement of columns, and inclusion of trademarks. Dkt. 44-8 at 2. Plaintiff also instructed her illustrator to "apply the same color tab format and shape like the Linux commands mouse pad." Dkt. 44-9 at 1. Plaintiff explains that her "innovative concept of grouping categories using a uniform multi-color scheme" originated from an earlier product she created for a "Linux commands mouse pad" which was launched on September 30, 2022. Dkt. 44-9, Ex. J (The Linux Commands Line Mousepad sold by Glittery Garden contains the same shaped headings as found in the Work).

It is true, of course, that a combination of unprotectable elements may qualify for copyright protection. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir.1994); *United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir.1978) (Kennedy, J.) ("[O]riginality may be found in taking the commonplace and making it into a new combination or arrangement."). *See also Metcalf v. Bocho*, 294 F.3d 1069, 1074, 9th Cir. 2002, *overruled on other grounds by Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ("The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is

FOR SUMMARY JUDGMENT - 9

1  not protectable, but a pattern of notes in a tune may earn copyright protection."). But it is not true
2  that *any* combination of unprotectable elements automatically qualifies for copyright protection.
3  "A combination of unprotectable elements is eligible for copyright protection only if those
4  elements are numerous enough and their selection and arrangement original enough that their
5  combination constitutes an original work of authorship." *Satava*, 323 F.3d at 811 (citing *Metcalf*,
6  294 F.3d at 1074; *Apple Computer, Inc.*, 35 F.3d at 1446. *See also Feist*, 499 U.S. at 358, 111
7  S.Ct. 1282 ("[T]he principal focus should be on whether the selection, coordination, and
8  arrangement are sufficiently original to merit protection.")).

9      Defendant argues the combination of unprotectable elements in Plaintiff's compilation
10 falls short of the standard of originality and lacks the quantum of originality needed to merit
11 copyright protection. *See Hamilton*, 583 F.2d at 451 ("Trivial elements of compilation and
12 arrangement, of course, are not copyrightable because they fall below the threshold of
13 originality."). Certainly, colors, headings, and labels of all shapes and sizes are in the public
14 domain and are available as stock elements on the internet, as are headings using commonplace
15 computer commands such as "Editing" "Selection" and "Navigation" – many of which can be
16 found on various reference guides for any computer operating system. Defendant also contends
17 the utilitarian nature of the Work is no different than "layouts, ideas, procedures, processes,
18 systems, methods of operation, concepts, principles, or discoveries," which are specifically
19 excluded from copyright protection. *See* 17 U.S.C. § 102(b).

20     Plaintiff argues however, that in addition to her novel coloring and heading title design,
21 she integrated an exercise diagram to "differentiate her product from existing market offerings."

Dkt. 44-9 at 5.[4] Defendant counters that Plaintiff's combination of colors, heading design, and inclusion of an exercise diagram is not unique and that similar products existed in the marketplace prior to Plaintiff's first publication of the Work on January 8, 2024. *See* Dkt. 26 at 2. In particular, the Amrgik brand large Excel shortcut mousepad with the same color design, heading title design, and an exercise diagram, was first available on Amazon on September 5, 2023. Dkt. 43-1 at 3-4 (ASIN B0DGL9M384). The inclusion of an exercise diagram on a mousepad with Excel shortcuts was available on Etsy on May 6, 2022 (Dkt. 43-1 at 5) and on Amazon on June 26, 2022 (*id.* at 6). In contrast, Plaintiff's Glittery Garden Excel Shortcut Mousepad (ASIN B0CNDF682X) is shown as having been first available on Amazon on November 15, 2023.[5]

Plaintiff argues that at least two of these mousepads do not also contain the same color scheme and heading title design. However, Defendant submitted these examples as evidence that Plaintiff was not the first to incorporate an exercise diagram on an excel shortcut mousepad. Dkt. 43, Ex. A at 5-7. Plaintiff also does not directly address Defendant's evidence that the Amrgik product (which does contain the same color scheme, heading title design, and exercise diagram) was first available on Amazon three months prior to the launch of her Work (and two months prior to when the Work was first available on Amazon) or that mouse pads combining Excel shortcuts with an exercise diagram existed on the market as early as May 2022. Plaintiff also does not address the distinction between her claimed "date of publication" and Amazon's "date first available." Rather, she argues Defendant "provides no proof of prior creation or fixation of

---

[4] As previously noted, Plaintiff did not create and claims no copyright protection in the exercise diagram itself.

[5] https://www.amazon.com searching "Excel-Shortcut-Keys-Mouse-Pad," viewed on February 28, 2025.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 11

the contested products." Dkt. 41 at 3. Plaintiff also contends the Amrgik product was not launched until October 2024 and in support, provides a screenshot of customer reviews of the Amrgik product from 2024 and a screenshot of a "7-day traffic score" chart which appears to reflect traffic of sales for this product in October 2024. Dkt. 44, Exs. B-1 and B-2.[6]

The Court is unable to determine exactly the scope and effectiveness of Plaintiff's "analytical tool" and "screenshots." It is not clear if the screenshots are capsule snapshots of a particular moment in time (*i.e.*, sales during a 7-day period) or if they are intended as definitive proof the Amrgik product was not available for sale prior to October 2024 or simply had no sales until those reflected in the 7-day period. On the other hand, Defendant's screenshot of the Amrgik product on Amazon reflects the product was available for purchase on Amazon three months prior to Plaintiff's launch of the Work.

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The ultimate question on a summary judgment motion is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

After viewing the parties' summary judgment evidence in the light most favorable to Defendant, the Court concludes that Defendant has raised a material question of fact as to the originality of Plaintiff's Work.

---

[6] Plaintiff also argues this product was suspended "due to copyright infringement" and provides a screenshot showing that this product no longer available on Amazon. Dkt. 36-4 and 36-6. The Court cannot determine from the evidence submitted if in fact, a copyright infringement case was ultimately filed against the brand and whether it was successful. The screenshot is also not evidence of *when* the product was available.

Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Dkt. 26).

DATED this 10th day of March, 2025.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13