UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TAN MAY YEN,

                Plaintiff,

    v.

KO CHEUK YIN,

                Defendant.

CASE NO. 2:24-cv-01565-BAT

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On September 24, 2024, *pro se* Plaintiff Tan May Yen commenced this 17 U.S.C. § 501 copyright infringement action against *pro se* Defendant Ko Cheuk Yin. Dkt. 1. Plaintiff alleges that Defendant's product (the "Accused Work") infringed Plaintiff's copyrighted work "Excel Shortcut Keys Mouse Pad" (the "Copyrighted Work"). Dkt. 5 ("Complaint").

In earlier orders, the Court determined that Defendant had no valid counterclaim under 17 U.S.C. § 512(f), no valid affirmative defense of copyright misuse, and no other valid counterclaims. Dkts. 47, 120. At the pretrial hearing, the Court found Plaintiff had demonstrated ownership of a valid copyright that Defendant was unable to rebut through submitting contradictory evidence. Dkt. 127; *see* Dkt. 126 ("Final Pretrial Order"); *see also* Dkt. 37, at 7–8; Thus, what was left for the factfinder to determine at trial was whether Plaintiff could demonstrate Defendant copied original expression from the Copyrighted Work and, if so, the measure of damages.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The parties consented to proceed before Magistrate Judge Brian A. Tsuchida, Dkts. 16, 17, and Judge Tsuchida conducted a Court Trial on May 4, 2026. Dkt. 128. Due to a medical condition, Defendant was permitted to attend the trial remotely via Zoom while Plaintiff appeared in-person. Dkt. 118. The Court has considered the parties' testimony, presentations, trial briefs, and the record and makes the following findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a). Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

## FINDINGS OF FACT

1.      Plaintiff Ms. Tan has been self-employed since 2016 and does business as the sole proprietor of Glittery Craft, selling products online at Amazon under the brands of Pixiecube and Glittery Craft. *See* Complaint 3. Ms. Tan makes all artistic design choices for her products. Ms. Tan's business produces five mousepads and one of them contains the Copyrighted Work that is the basis for this lawsuit. As a seller using the Amazon platform, Ms. Tan monitors the reports from Amazon, which include the business reports and payment reports showing sales and revenue, and also uses third-party market intelligence tools such as Helium 10 and Xiyouhauci that Amazon makes available to track sales activity of her products and those of her competitors, including historical data.

2.      Glittery Craft is the registrant and author listed on U.S. Copyright Office Registration Number VA 2-411-555, for a work titled "Excel Shortcut Keys Mouse Pad," issued on September 9, 2024, with an official effective registration date of June 30, 2024 ("Copyrighted

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 2

Work"). Ex. 4. The creation is "2-D Artwork" that was made for hire.[1] *Id.* The rights and permissions are for Glittery Craft and May Yen Tan with Ms. Tan providing the certification. *Id.* The year of completion of the Copyrighted Work is 2023, and the date of first publication is January 8, 2024. Ex. 4.

3.    Plaintiff offered the Copyrighted Work as the derivative mousepad product for sale online at Amazon under the brand Pixiecube with the Amazon Seller's Identification Number ("ASIN") of B0CNDF682X.[2] Exs. 6, 46. Although the Amazon product page shows that the mousepad was first available on November 15, 2023, that date was not the date on which her product was first available for sale. Ex. 46. The correct date for first publication, i.e., when the Copyrighted Work was made available for sale and widely disseminated, was January 8, 2024, the publication date listed on the Copyright Office registration. Exs. 4, 6. As late as November 27, 2023, Ms. Tan was still providing instructions to her designer, and the design was not finalized until on or about that date. Exs. 34, 37. The November 15, 2023 date for the ASIN is when Plaintiff used an Amazon tool to receive a catalog digital entry date so that she could download a bar code from Amazon to be used for sales and shipping. That is, the "first available" date on Amazon shows not when her product was first made available for sale;

---

[1] The Court excluded Exhibit 1, which is an April 2025 copyright assignment from illustrator Tan Twu Chin to Ms. Tan, because it was produced long after the discovery deadline. Dkt. 120, at 2. The Court did not, however, restrict Plaintiff from revisiting the admission of the copyright assignment should Plaintiff's ownership of the copyright come into reasonable question. *Id.* As stated earlier, Defendant offered no evidence to challenge Plaintiff's ownership of the Copyrighted Work.

[2] The image Plaintiff deposited with the Copyright Office matches the images displayed on Plaintiff's Amazon listing of her product. *Compare* Ex. 5 *with* Ex. 6. Although Defendant suggests that the Copyrighted Work might be another, unspecified design in the absence of an official, certified deposit copy, he has not produced a deposit copy, certified or uncertified, that calls into question the authenticity of the depictions of the Copyrighted Work displayed consistently in the deposit copy submitted by Plaintiff and in the Amazon listing for Plaintiff's mousepad product.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 3

instead, it shows when the ASIN was created as a prerequisite for being able to offer her product for sale online. Ex. 46

4.    For liability purposes, the sole product at issue in this action is the Accused Work, i.e., the original Excel shortcut mousepad design sold on the Amazon marketplace by Defendant, under ASIN B0D14B9C6V ("Accused Work").[3] Complaint 4; Final Pretrial Order 2. The Accused Work was attached to the Complaint and was displayed on Defendant's listing for his mousepad product "Excel Cheat Sheet Desk Mat." Dkt. 5-1, at 2; Ex. 19.

5.    On June 13, 2024, Plaintiff submitted a Digital Millenium Copyright Act ("DMCA") takedown notice to Amazon targeting Defendant's ASIN B0D14B9C6V, resulting in the temporary removal of the Defendant's listing. Final Pretrial Order 2; Ex. 31. On June 18, 2024, Defendant submitted a DMCA counter-notification under 17 U.S.C. § 512(g), claiming a good faith belief the material identified in the Notice of Infringement was removed or disabled as a result of mistake or misidentification. Final Pretrial Order 2. On the same day, Amazon informed Plaintiff that Defendant's listing would be reinstated unless Plaintiff provided notice that a lawsuit had been filed against Defendant within 10 business days. Complaint 3; Ex. 32. Plaintiff filed a federal copyright complaint on June 20, 2024, but that suit was dismissed in August 2024 without prejudice for failure to state a claim because Plaintiff had not yet registered

---

[3] Defendant modified the design displayed on the Accused Work after Plaintiff initiated enforcement actions. Final Pretrial Order 3. In December 2025, the Court granted *Plaintiff's* unopposed motion in limine to exclude the modified design from the lawsuit based on Plaintiff's assertions that it was "irrelevant to whether Defendant's accused mousepad . . . infringed Plaintiff's Copyrighted Work, which is the sole basis of this action," and because Plaintiff asserted that "[t]he admission of Defendant's modified mousepad as part of the infringement analysis would [be] irrelevant, highly prejudicial to Plaintiff, likely cause confusion of genuine issues, and would severely mislead the factfinder." Dkt. 98, at 1; *see* Dkt. 99. The Court therefore later denied Plaintiff's motion to amend the pleadings to include the modified design or other designs in March 2026 on the eve of trial and long after the deadline for amending the pleadings had passed. Dkt. 110, at 2.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
- 4

the copyright at issue. *Yen v. Yin*, No. C24-919-JHC (W.D. Wash., filed June 20, 2024), Dkt. 16 (Aug. 5, 2024). On September 17, 2024, Amazon responded to Plaintiff's renewed efforts to remove Defendant's Accused Work by indicating that it was taking no further action. Ex. 30. Thus, on September 17, 2024, a week before the current complaint was filed, Defendant's Accused Work was available for sale online at Amazon at Defendant's product page. Ex. 19. By November 4, 2024, a modified design ("Modified Work") appears and was viewable on Defendant's same product page for ASIN B0D14B9C6V. Ex. 21.

6.      Plaintiff does not assert copyright ownership in the ideas reflected in the non-protectable Excel shortcuts, computer terms, or in the exercise diagrams, but rather claims copyright protection in the expressive compilation, arrangement, selection, and coordination of the non-protectable elements. Final Pretrial Order 3.

7.      There are over 270 Excel shortcuts in existence, but Plaintiff selected and included only approximately 150 Excel shortcuts/elements in the Copyrighted Work. Ex. 49. Those shortcuts can be organized in numerous ways, including across at least 25 possible categories. *Id.* Plaintiff, however, arranged the 9 shortcuts categories and 2 non-shortcuts categories into 11 distinct categories. Ex. 5. Moreover, Plaintiff's arrangement and stylization of the non-protectable elements were artistic rather than functional choices. For example, there was no functional reason for placing "Navigation" in the second column or for "Editing/Selection" to be colored green. Plaintiff purposefully placed longer, lateral elements on the far left and far right to create energy; the use of green and yellow on the far left and the far right were to create symmetry; the flags on the boxes are curved on the left and right and protruding on the right as design choices; "Useful Excel Tricks" are in a larger section and placed centrally but extending across the central line of the design to break up rigidity of design; the groups on the far left and

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 5

far right are stacked while the center groups for shortcuts are placed symmetrically as design choices. Plaintiff's choices of which 100 shortcut keys to include out of the hundreds were based on personal preferences and research into users' preferences. Plaintiff grouped certain functions together—for example, "Editing/Selection," "Table/Chart/Object," "Data/Functions"—as aesthetic rather than functional choices. Plaintiff chose 7 Useful Excel Tricks out of more than a thousand based on personal preferences and research into user preferences. Similarly, Plaintiff chose 14 Useful Excel Formulas out of a few hundred formulas based on personal preferences and research into users' preferences. Plaintiff's choice to include 8 shortcuts out of the grouping "Table/Chart/Object" allowed her to size the list accordingly and place it beneath the 28 shortcuts in the Editing/Selection grouping. Plaintiff's choices to place 10 desk exercises and then to place the punchline of "EXCEL– LENT AT MY JOB! I know my sheet." at the bottom of the mousepad were dictated by design rather than function. Plaintiff's coordinated colors, proportion, and placement of the elements were all artistic choices unrelated to function. For example, for uniformity, each individual box keeps the same color in the flag, the text, the line boxes, and the keys while using white text for the descriptors.

8. In July 2023, Plaintiff took her initial compilation of Excel shortcuts and contacted her graphic designer Tan Twu Chin, who was to use Adobe Illustrator to create the artwork for high-definition printing on the mousepad. Ex. 34. Plaintiff sought assistance in designing an Excel shortcut mousepad with a precise layout size with a color scheme that would follow another of Plaintiff's designs, a Linux mousepad with a black background and some color. Ex. 34 (TAN0127). Over the ensuing months, Plaintiff continued to provide her graphic designer with detailed instructions and modifications: adding more shortcuts and formulas (TAN0128-TAN0129); abbreviating, coloring, stretching, and compressing the text and

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 6

placement of the text (TAN0130); providing a graphic example of how to fill up the bottom space for 10 exercises (TAN0131); instructing on capitalization, spacing, splitting up "Useful Excel Tricks," and how and where to place the Pixiecube logo and the Microsoft trademark (TAN0132–TAN0133); providing a draft specification of the layout, how the tabs should look, the removal of the + sign for commands, and redline boxes to show how the categories should be arranged (TAN0139); how to arrange the elements and typography, such as editing color boxes, bolding the typeface, and shading the rows (TAN0143); indicating what should be added to "Useful Excel Tricks," such as creating a drop down list and shortening phrases (TAN0140); and editing and stylizing the exercise diagrams (TAN0144-TAN0145). Ex. 34.

9.    The final Adobe Illustrator artwork was completed on or about November 27, 2023. Ex. 37. On or about that date, Plaintiff sent the artwork to the manufacturer and ordered 1000 of the physical mousepads for delivery to Amazon. Plaintiff first published the Copyrighted Work and made it available for sale via Amazon on January 8, 2024. Ex. 4.

10.    On October 25, 2024, in an e-mail message Defendant admitted he had access to Plaintiff's product while designing the Accused Work. Ex. 16. He stated, however, that he was "mainly inspired" by 8 different ASIN listings, one of which was Plaintiff's Copyrighted Work (B0CNDF682X). *Id.* According to Defendant, his design was independently created and any similarities between the Copyrighted Work and the Accused Work arose from "functional aspects rather than copying any unique creative elements from your design." *Id.* Nevertheless, Defendant admitted to becoming aware of the Copyrighted Work after its listing on Amazon around January 2024 and "observe[d] the Plaintiff's work during the design process of the Accused Work." Ex. 14 (TAN0051). Although Defendant alleges he began work on designing the Accused Work in September 2023, he admits that he completed the design of the Accused

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 7

Work in March 2024. Ex. 14 (TAN 0049). Defendant asserts he first offered the Accused Work for sale in March 2024 exclusively through Amazon, and also (inconsistently) asserts he launched the Accused Work associated with ASIN B0D14B9C6V on Amazon on May 17, 2024. *Compare* Ex. 12 (TAN0041) *with* Ex. 14 (TAN0052).

11.    The metadata for Defendant's proof of creation shows a "New Excel Table.xlsx" file dated March 27, 2024. Ex. 11. Defendant's file groups the 9 shortcut categories and the 2 non-shortcut categories in the same 11 categories as the Copyrighted Work: "Pivot Tables," "Table/Chart/Object," "Navigation," "Editing/Selection," "Power Pivot," "Formatting," "Display Dialog/Menu," "Workbook Basics," "Useful Excel Tricks," "Data/Functions," "Useful Excel Formulas." Ex. 11 (TAN0033). Moreover, the ChatGPT prompt Defendant used to create his Accused Work shows he asked for the creation of shortcut tables using nearly all of the same categories and number of shortcuts under each category, save for the omission of "Data/Functions" and a request for 15 (instead of 13) shortcuts for "Display Dialog Menu":

| Label | Defendant's ChatGPT prompt typed: | Plaintiff's design: | Defendant's accused design: |
|---|---|---|---|
| | Produce below (translated) Excel shortcuts table: | | |
| A | 28 shortcuts for Editing/Selection, | Editing/Selection – 28 shortcuts | Editing/Selection – 28 shortcuts |
| B | 8 shortcuts for Table/Chart/Object, | Table/Chart/Object – 8 shortcuts | Table/Chart/Object – 8 shortcuts |
| C | 15 shortcuts for Navigation, | Navigation – 15 shortcuts | Navigation – 13 shortcuts |
| D | 7 shortcuts for Power Pivot, | Power Pivot – 7 shortcuts | Power Pivot – 7 shortcuts |
| E | 6 shortcuts for Pivot Table, | Pivot Table – 6 shortcuts | Pivot Table – 6 shortcuts |
| F | 15 shortcuts for Display Dialog/Menu, | Display Dialog/Menu – **13** shortcuts | Display Dialog/Menu – **13** shortcuts |
| G | | Data/Functions – **13** shortcuts | Data/Functions – **13** shortcuts |
| H | 14 shortcuts for Useful Excel formulas, | Useful Excel formulas – 14 shortcuts | Useful Excel formulas – 14 shortcuts |
| I | 17 shortcuts for the Workbooks Basics, | Workbooks Basics – 17 shortcuts | Workbooks Basics – 17 shortcuts |
| J | 16 shortcuts for the Formatting. | Formatting – 16 shortcuts | Formatting – 16 shortcuts |

Ex. 23 (TAN0107). Once the Accused Work was finalized and available online, the 11 categories and the number of shortcuts/tips listed under each category were nearly identical, save

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 8

for the Accused Work showing 13 instead of 15 shortcuts for Navigation and 6 instead of 7 elements for "Helpful Excel Tricks." Ex. 23 (TAN0106–TAN0107).

12.     As a visual comparison shows, the Copyrighted Work and the Accused Work share numerous, obvious similarities:

Plaintiff's design



Defendant's listing image    https://m.media-amazon.com/images/I/71B+U749bUL.jpg



Ex. 28. The similarities include the following:

(a) *Categories and structure:* the Accused Work includes the same 11 category

headings as the Copyrighted Work, including "Editing/Selection,"

"Table/Chart/Object," "Navigation," "Power Pivot," "Pivot Table," "Display

Dialog/Menu," "Data/Functions," "Workbook Basics," "Formatting," "Useful

Excel Tricks," and "Useful Excel Formulas." In both works, each category is arranged with identical sequence, placement, and positioning. Exs. 5, 18, 23, 25, 28.

(b) *Quantities of shortcuts within each category:* The Accused Work aesthetically mirrors Plaintiff's selection, arrangement, and compilation by including nearly identical quantities of shortcuts within many categories, such as "Editing/Selection" (28 shortcuts), "Table/Chart/Object" (8 shortcuts), "Power Pivot" (7 shortcuts), "Pivot Table" (7 shortcuts), "Display Dialog/Menu" (13 shortcuts), "Data/Functions" (13 shortcuts), "Workbook Basics" (17 shortcuts), "Formatting" (16 shortcuts), and "Useful Excel Formulas" (14 shortcuts). Exs. 23, 28. The exceptions are that, in the Accused Work, "Navigation" contains 13 shortcuts (instead of 15) and "Useful Excel Tricks" contains 6 elements (instead of 7). Exs. 23, 28.

(c) *Shortcuts/elements within each category:* In multiple categories, the Accused Work reproduces nearly all of the same shortcuts contained in the Copyrighted Work. Exs. 23, 28. For example, the "Navigation" table in the Accused Work contains 13 of the 15 shortcuts contained in the Copyrighted Work. Exs. 23, 28. The purported differences are trivial and not perceptible unless closely examined side-by-side. For example, a close-up comparison of the "Display/Dialog/Menu" category in both works shows that the Accused Work has the same number of shortcuts (13), while 12 of the 13 shortcuts and corresponding descriptions are nearly identical to the shortcuts and corresponding descriptions in the Copyrighted Work, though they are listed in

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 10

a different order:



Dkt. 124 ("Plaintiff's Tr. Br."), at 9; Exs. 5, 18, 28.

(d) *Layout, arrangement, and organization:* The Copyrighted Work and Accused Work have the same horizontal mousepad format of the same size, with identical placement of each category. Ex. 28. Both works include 10 white human-figure exercise diagrams positioned along the bottom-center portion of the design. *Id.* Both works include a punchline beneath the exercise diagrams. *Id.* Both place the Excel logo to the right of the punchline with the Accused Work nudging it closer to the company logo. *Id.* Both works place their company logos in the lower righthand corner. *Id.* The Accused Work and the Copyrighted Work also share many of the same creative, non-functional decisions, such as separating "Pivot Table" and "Power Pivot" into two separate categories and including "Useful Excel Tricks" and "Useful Excel Formulas" sections. *Id.*

(e) *Grid structure and table design:* the Copyrighted Work and the Accused Work share the same grid layout, including similar table sizes, proportions, spacing, alignment, margins, and column structure (i.e., the shortcuts on the left and the descriptions on the right). Ex. 28. The two works have the same relative heights of each matching category table, same vertical alignment lines across panels, same horizontal alignment of top-row boxes, same spacing between panels, and same consistent margins around edges. *Id.* Nearly every category is assigned a variant from the same color (Copyrighted Work/Accused Work): "Editing/Selection" (green/green); "Table/Chart/Object (yellow/yellow); "Navigation" (aqua/blue); "Power Pivot" (red/pink); "Pivot Table" (red/orange); "Display Dialog/Menu" (blue/aqua); "Data/Functions" (pink/lavender); "Workbook Basics" (green/purple); "Formatting" (yellow/green). The most noticeable difference in color families are in "Workbook Basics" and "Formatting," where Plaintiff intended to mirror on the far-right side the same colors that appear on the far left side i.e., different hues of green and yellow, while the Accused Work does not keep the same symmetry by choosing blue and yellow on the right. *Id.*

(f) *Shortcut key design:* The Copyrighted Work and the Accused Work present the shortcut keys similarly, where each Excel shortcut is in its own standalone, colored text box with rounded corners. Ex. 28. Each component of each shortcut in both works shares the same color as every other shortcut in its same category (i.e., all shortcuts within the "Editing/Selection" table are in a

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 12

green text box). *Id.* Each shortcut in both works has the same spacing and alignment between each other. *Id.*

    (g) *Font and text conventions:* The Copyrighted Work and the Accused Work apply black text for the shortcut keys and white text for descriptions, as well as consistent capitalization and formatting across headers and tables. Ex. 28.

    (h) *Overall look and feel:* The Copyrighted Work and the Accused Work share strikingly similar visual presentations, including overall horizontal desk mat layout, table structure, layout and alignment of tables across a grid, outline/border styling around each table, positioning and placement of exercise figures, positioning and placement of the punchline, positioning and placement of the Excel logo and company logo, black background, color palette across categories, color contrast of the same or similar colors against the black background, format for each shortcut key, visual spacing of text boxes and other elements. Ex. 28.

13.    At trial, Defendant asserted the dissimilarities between the Copyrighted Work and the Accused Work were too numerous to name. In the trial brief, Defendant referred to four dissimilarities. Dkt. 125 ("Defendant's Tr. Br."), at 6. First, Defendant stated the core section headings differed in that the Copyrighted Work referred to "Useful Excel Tricks" while the Accused Work referred to "Useful Excel Tips." *Id.* This is incorrect. Both works refer to "Useful Excel Tricks." Ex. 28. Second, Defendant stated the color schemes for the corresponding sections differed, e.g., "Plaintiff's core section is purple, while Defendant's corresponding section is orange-red." Defendant's Tr. Br. 6. If Defendant is referring to the "core section" as "Useful Excel Tricks," he is correct the Copyrighted Work employs purple for the table while the

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 13

Accused Work uses red for its header (and yellow for the command text). Ex. 28. Otherwise, the color similarities and differences for the category tables are set forth above in Section 12(e) and are apparent from comparing the works in Exhibit 28. Third, Defendant states the descriptive text explaining identical Excel functions differs materially between the true works. Defendant's Tr. Br. 6. This is sometimes accurate, for example, when the Copyrighted Work refers to the "Power Pivot" shortcut "Alt ↓" with the description "AutoFiller Menu dialog box," while the Accused Work contains the description "Open the AutoFiller Menu dialog box." Ex. 28. It is incorrect with respect to the descriptions listed in the "Display Dialog/Menu" category, where the descriptions are virtually identical. Ex. 28; *see supra, S*ection 12(c). Regardless, Plaintiff claims no copyright protection over the text itself, rather she claims protection over the aesthetic presentation of the text as it coordinates with other elements of the layout. Fourth, Defendant states the "[o]verall layout, typography, and visual formatting of non-functional elements differ significantly." Defendant's Tr. Br. 6. The Court disagrees with this statement insofar that if the two works are placed side-by-side with the text replaced entirely by nonsense words, it would take careful scrutiny to determine whether they were different works or whether the color saturation on the monitor simply needed to be adjusted. At trial, Defendant noted the Accused Work employed different images for three commands in the section "Useful Excel Tricks"; meanwhile, Plaintiff noted the Accused Work chose the exact three commands for the images and placed those similar images in the same way on the layout. Ex. 28. Although the three images are different, the images in the Accused Work produce a similar aesthetic effect to the Copyrighted Work due how they are placed and coordinated with the same commands in the same locations. *Id.* Careful comparison also shows that on the Accused Work the upper lefthand corners of headings are rounded at a different angle; the headings for "Useful Excel Tricks" and

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 14

"Useful Excel Formulas" are colored boxes rather than outlines; the exercises are described as "11 invigorating desk stretches! (10-20 seconds each)" (though there are, in fact, only 10 images); and the punchline is "Master your spreadsheets with precision: Let's Crunch Numbers and Crack Jokes!" Ex. 28.

14.     The Copyrighted Work, a compilation, is original, i.e., it was created independently by Plaintiff and by the contribution of at least some minimal creativity in selecting, coordinating, and arranging the non-protectable Excel shortcuts, computer terms, and exercise diagrams. First, there is no evidence Plaintiff copied the Copyrighted Work from another work. As set forth earlier, Plaintiff credibly testified and demonstrated that she spent months exchanging detailed instructions and edits with her graphic designer before finalizing the design of the Copyrighted Work in late-November 2023. There is no indication Plaintiff consulted designs other than her own for an earlier Linux mousepad while designing the Copyrighted Work. Second, most of the designs referred to by Defendant as similar either do not predate or do not closely resemble the Copyrighted Work. *See* Exs. 29, 44, 69. Third, Plaintiff has demonstrated the designs that resemble the Copyrighted Work that have an Amazon "first available" date prior to the Copyrighted Work's publication in January 2024 do not appear to have been published before that date. Exs. 2, 39, 44, 69. Although the Amrgik mousepad Amrgik (ASIN B0DGL9M384) has an Amazon "first available date" of September 5, 2023, like the November "first available date" on Amazon of the Copyrighted Work, this date does not indicate when the product was first published or first made available for sale. Exs. 2, 39, 44, 69. Amazon makes available to its sellers the third-party tools of Helium 10 and Xiyouhauci that allow anyone to look up the historical sales activity for the products sold. The measurable sales activity shown by the Amrgik product on Xiyouhauci begins in October 2024, nearly nine months after

the Copyrighted Work was first published. Exs. 2, 51.  Xiyouhauci also shows that all measurable sales activity for the Amrgik product stops in October 2024, when Amazon responded to the copyright claim on the mousepad by removing the product.[4] Exs. 2, 44, 51. Fourth, Plaintiff has shown more than minimal creativity in the selecting, coordinating, and arranging the non-protectable elements of the Copyrighted Work. The Copyrighted Work overall has a distinctive look and feel that relies upon color design, placement, coordination, and proportion of the numerous elements.

15.     In creating the Accused Work, Defendant copied the Copyrighted Work. Defendant admitted to having access to the Copyrighted Work and being inspired by it when creating the Accused Work before finalizing his design in March 2024. Ex. 14 (TAN0051); Ex. 16. Defendant's testimony that he created the Accused Work independently is not credible and is contradicted by his own statements and the evidence. Out of a universe of 270 Excel shortcuts and the ability organize them into at least 25 categories, Defendant chose an arrangement that precisely mimicked Plaintiff's decision to place 9 shortcuts categories and 2 non-shortcuts

---

[4] Moreover, a review of the same ASIN B0DGL9M384 from Amazon MX (Mexico) in August 2024 shows that the design at that time appears to be entirely dissimilar: a neon desk pad with a pink and white background and animated figures and no Excel shortcuts. Ex. 39 (TAN0159). This is so even though the Amazon MX listing in January 2025 refers to an Excel mousepad. Ex. 39 (TAN0158, TAN0161). This may be related to Amazon permitting the merging of different ASINs with the "target" ASIN receiving the sales history and "first available" date of a prior, merged ASIN. Ex. 40. This phenomenon is further illustrated by ASIN B0DNJGLF26, which Defendant cited as a design similar to the Copyrighted Work, but now displays an entirely different product: a "Leather Desk Mat Protector, Mouse Pad, Non-Slip PU Leather Desk Blotter" that contains no Excel shortcuts or even a passing resemblance to the Copyrighted Work, Ex. 44 (TAN0266). In any event, these exhibits are further evidence that Amazon's "first available" date may not reliably indicate when a particular product or design was first published. In responding to Plaintiff's interrogatory about the "Date First Available" of the Accused Work, Defendant concedes as much by answering that he "does not have control over how Amazon determines or displays the "Date First Available" on its platform." Ex. 14 (TAN0052–TAN0053).

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 16

categories into 11 distinct categories. Exs. 28, 49. More than two months after having reviewed the Copyrighted Work and being inspired by it, Defendant instructed ChatGPT to help create a design that not only employed those precise categories but also a nearly identical number of shortcuts/elements under those categories. Ex. 23. Thereafter, the categories and number of underlying shortcuts in the Accused Work were adjusted by Defendant to gain even greater similarity to the Copyrighted Work. Dkt. 28. The resulting Accused Work, if one were to replace the unprotectable text with nonsense language, is so similar to the Copyrighted Work in layout, arrangement, proportion of, and color scheme that one would be forgiven for believing them to be the same product or an updated version of the same product viewed on different digital monitors.

16.    Plaintiff attempted to demonstrate damages in terms of (a) Plaintiff's actual damages, using a diversion model in which each sale made by Defendant represents a diverted sale in whole or in part; and (b) Defendant's profits. In both measures, Plaintiff referred to sales activity from the Amazon seller tool Helium 10 for the Accused Work (ASIN B0D14B9C6V) for the period April 5, 2024, until February 8, 2026, as well as to continuously accruing damages to the present. Ex. 42. Plaintiff showed she regularly uses the Amazon seller tools of Helium 10 and Xiyouhauci to calculate her own sales and profits, as well as to compare her sales and profits to those of other products. Throughout the litigation and during trial, Defendant has also relied on Amazon third-party tools, including Helium 10 and Xiyouhauci, as an accurate basis for challenging Plaintiff's damages figures. Ex. 64 (Defendant using Amazon third-party tools to demonstrate "Proof of Plaintiff benefit from infringement complaints"); Dkt. 68 (Defendant using third-party tools to demonstrate increase in Copyrighted Work's sales, impact of the take-down notice, and the advertising costs incurred by Defendant to retain sales); Dkt. 18, at 17; Dkt.

18-5; Defendant's Tr. Br. 10 (relying on Amazon third-party tools to demonstrate Plaintiff's average monthly sales). With respect to Defendant's profits, Plaintiff made estimates about Defendant's revenue because Defendant declined to answer the interrogatory about his expenses. Tr. 14 (TAN 0058).

17. With respect to actual damages, Plaintiff and Defendant sell directly competing mousepads within the same Amazon marketplace and target the same consumer base. Plaintiff therefore calculated lost profits according to a diversion model in which each sale made by Defendant represented a diverted sale in whole or in part. Plaintiff's Tr. Br. 30. Plaintiff earns approximately $8.36 in profit per unit after accounting for cost of goods, fulfillment fees, and advertising expenses. Ex. 41. Defendant sold approximately 16,194 units of the Accused Work from April 5, 2024, to February 8, 2026. *Id.* Although Defendant challenges this timeframe with respect to the Accused Work, he has not shown or explained why the use of Amazon third-party tools to determine sales activity was improper, particularly in light of his own reliance on the same third-party tools to calculate sales activity. Exs. 63, 64, 68. Applying a diversion rate of 40% to 50%, Plaintiff estimated lost profits from approximately $54,000 to $67,000, and a 70% diversion rate would bring lost profits up to about $94,000. *See* Plaintiff's Tr. Br. 31. At trial, Plaintiff proposed that a 100% diversion rate would be proper given the substantial similarity of the products, the direct competition between the works, and all the sales taking place on Amazon. According to Plaintiff, doing so would result in an actual damages figure of approximately $135,000. Defendant argues, however, that the availability of other, less expensive competing products, in addition to proof of Plaintiff's ample sales, have meant that Plaintiff's actual damages from the Accused Work have been negligible.

18.    With respect to Defendant's profits, Plaintiff asserted the Accused Work generated approximately 16,194 units sold, $259,291 in gross revenue, and $67,485 in estimated profit from April 5, 2024, to February 8, 2026. Exs. 41–43. Plaintiff calculated Defendant's revenue by multiplying unit sales by the prices at which the product was sold during that period with the sales and pricing data corroborated by Amazon third-party marketplace analytics tool Helium 10. Plaintiff's Tr. Br. 31. To approximate Defendant's profits, Plaintiff applied expense assumptions from her experience as a seller on Amazon: (a) an average fulfillment by Amazon fee of $4.55 per unit (2024-26); (b) a 15% referral fee; (3) a 10% advertising expense; and (4) an estimated landed product cost of $3.29 per unit. Plaintiff's Tr. Br. 32. Plaintiff's application of these expenses to Defendant's gross revenue for the Accused Work yielded an estimated total profit of approximately $67,485. *Id.* Defendant did not prove any other deductible expenses aside from his challenge to the time period the Accused Work was available (as opposed to the Modified Work that is not subject to the current infringement analysis).

19.    This case does not present circumstances in which both actual damages and Defendant's profits should be awarded. Plaintiff uses as the basis for both calculations the same number of the Accused Work sold, 16,194 units, with the difference being whether profits are calculated (a) based on Plaintiff's net profit times a diversion percentage (actual damages), or (b) based on Defendant's net profit (Defendant's profit). That is, were Plaintiff's awarded actual damages, that calculation would already have taken into account Defendant's profits.

20.    With respect to actual damages, Plaintiff has not demonstrated what diversion rate is applicable. Although Plaintiff states it is conservative to presume that each sale of the Accused Work diverted 40% to 60% of Plaintiff's per-unit profits, and it was justified to presume that each sale of the Accused Work diverted 100% of Plaintiff's per-unit profits, she has presented no

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
- 19

data or testimony to help determine to what extent the Accused Work's sales traffic may have diverted sales from products other than the Copyrighted Work and, thus, what apportionment should be credited towards the Copyrighted Work vis-à-vis competing Excel mousepad products.

21. Plaintiff has, however, accurately described how Defendant's profits should be calculated, i.e., gross revenue from sales of the Accused Work minus reasonable expenses. Defendant declined to specify what other deductible expenses he incurred in selling the Accused Work and has not reasonably challenged the presumed expenses set forth by Plaintiff.

22. Defendant has, however, raised significant doubts about the relevant period that the Accused Work was sold on the Amazon marketplace. Based on Plaintiff's own granted motion in limine, the only design that is subject to this copyright infringement analysis is Defendant's Accused Work sold on Amazon as ASIN B0D14B9C6V. Dkts. 98, 99; *see supra, Section* 4 n.3. Although the parties agree that at some point in time the Accused Work was replaced with a modified design, Final Pretrial Order 3, neither party has presented competent evidence about when the modified design or designs went on sale or, indeed, whether the Accused Work was ever removed from sale. Defendant has presented conflicting dates. In the pretrial conference, Defendant stated that the Accused Work had been replaced by the Modified Work in September 2024 after the filing of the current lawsuit. Dkt. 127. Plaintiff disputed this proposition. *Id.* At trial, Defendant stated that the Accused Work had been available for sale only until June 4, 2024, but provided no evidence in support of this date and did not explain why the date he presented to the Court only days earlier was incorrect. It is undisputed that the Accused Work remained on sale on Amazon at ASIN number of B0D14B9C6V as of September 17, 2024 via the presented evidence, and through September 24, 2024 (the date this action was filed) by Defendant's only credible admission. Exs. 19, 127; *see* Ex. 17 (in an email dated October 28,

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 20

2024, Defendant stated "the product in question is an older version; we have since updated it based on customer feedback"); Final Pretrial Order 3. Plaintiff presented evidence that the same ASIN number can be used to sell different products, despite Amazon's instructions that merged ASIN numbers should offer the same product. Exs. 39, 40, 43; *see supra, S*ection 14 n.4. Neither party has commented on the image of the Accused Work appearing on the product page for the Modified Work, dated November 5, 2024, nor how its appearance would affect the calculation of damages were it utilized for selling a modified design. Ex. 21 (TAN0102).[5]

      23.     Plaintiff has demonstrated damages in the amount of Defendant's profits for the period of from April 5, 2024, to at least September 30, 2024. The parties agree that a modified mousepad took the place of the Accused Work on the ASIN B0D14B9C6V sometime after this lawsuit was filed on September 24, 2024. Plaintiff paid her filing fee on October 1, 2024; electronic summons was issued on October 2, 2024; and Defendant registered to electronically file and receive electronic service on October 3, 2024. Defendant's only credible statement regarding when he may have replaced the Accused Work with a modified design named a date within September 2024, while Plaintiff has remained silent about the actual date. Dkt. 127. It is clear that by November 2024, a modified design was offered at ASIN B0D14B9C6V, albeit with at least one older image of the Copyrighted Work. Ex. 21. Plaintiff has thus shown by a preponderance of the evidence that the Alleged Work remained on sale on Amazon until the end of September 2024. From April 2024 to September 2024, Defendant sold approximately 1,521 units of the Accused Work (April (0), May (123), June (225), August (467), September (706).

---

[5] The Court limited admission of Exhibit 21 by omitting the images of the Modified Work because the modified design is not accused in this lawsuit. Final Pretrial Order 2. Any images of the Accused Work were, however, admitted, including the image of the Accused Work that remained on ASIN B0D14B9C6V as of November 5, 2024. Ex. 21 (TAN0102).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
- 21

Ex. 41. Given the average price, revenue, net profit per unit, and estimated net profit per month, that amounted to $6,912 of Defendant's estimated net profit for April 2024 to September 2024. *Id.*; Plaintiff's Tr. Br. 32.

## CONCLUSIONS OF LAW

24.     The Court has federal question jurisdiction over this copyright infringement action. 17 U.S.C. § 101 et seq.; 28 U.S.C. §§ 1331, 1338(a). The Court has personal jurisdiction over this matter, and venue is proper in this district, because Defendant filed a DMCA counter-notification with service provider Amazon.com and therefore consented to the jurisdiction in the Western District of Washington. See Dkt. 29; 28 U.S.C. § 1400(a).

54.     Plaintiff alleges that Defendant's Accused Work infringed on the Copyrighted Work and that Defendant's use of the Copyrighted Work is not fair use because it is not transformative. Plaintiff's Tr. Br. Plaintiff seeks damages and a permanent injunction that prohibits Defendant from making, advertising, or offering for sale any copies or derivatives of the Copyrighted Work. *Id.* Defendant denies the allegations and claims he independently created his product relying primarily on publicly available Excel shortcut information. Defendant's Tr. Br. Defendant also questions Plaintiff's ownership of the copyright and the originality and creativity of the Copyrighted Work. *Id.* To establish copyright infringement, Plaintiff must prove two elements: (1) Plaintiff is the owner of a valid copyright, and (2) Defendant copied original expression from the Copyrighted Work. *See Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991); *see also Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013); *Great Minds v. Office Depot*, 945 F.3d 1106, 1110 (9th Cir. 2019).

26.     As discussed earlier, the Court determined at the pretrial conference that Plaintiff has demonstrated that she owns a valid copyright by presenting the Certificate of Registration for

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 22

U.S. Copyright Office Registration Number VA 2-411-555, entitled "Excel Shortcut Keys Mouse Pad," issued on September 9, 2024, with an official effective registration date of June 30, 2024. Ex. 4. The Certificate of Registration indicates the author of the Work as "Glittery Craft" and the Copyrighted Work as a two-dimensional artwork "made for hire." Plaintiff does business as and is the sole proprietor of Glittery Craft and Glittery Craft holds the exclusive rights to the Work. *Id.* If a work is made for hire, "the employer or other person for whom the work was prepared is considered the author ..., and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all the rights in the copyright." 17 U.S.C. § 201(b); *see also*, 17 U.S.C. § 101 (defining "work make for hire"). Although Defendant questions whether the submitted deposit copy of the Copyrighted Work is "authentic," he has presented no evidence that calls into question the authenticity of the deposit copy or Plaintiff's ownership of the Copyright. Dkt. 127.

27.    The Court finds that Defendant copied original expression from the Copyrighted Work in creating and offering for sale the Accused Work. "Original, as the term is used in copyright, means only that the work was independently created by the author . . . , and that it possesses at least some minimal degree of creativity." *Feist Publications*, 499 U.S. at 345. A work is original if "the author contributed something more than a merely trivial variation, something recognizably his own." *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (citation omitted). However, when a work embodies only the minimum level of creativity necessary for copyright, it is said to have "thin" copyright protection, which "protects against only virtually identical copying." *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003). Whether a work involves sufficient creativity is a question of fact. *See Dezendorf v. Twentieth Century-Fox Film Corp.*, 99 F.2d 850, 851 (9th Cir. 1938) (holding that "question of originality"

is "one of fact, not of law"); Paul Goldstein, *Goldstein on Copyright*, § 2.2.1 (3d ed. 2023) ("Courts have historically characterized originality as a question of fact.").

28.     The Court finds that Plaintiff's Copyrighted Work is original: (1) the Copyrighted Work was created independently by Plaintiff, i.e., not copied from another work; and (2) the Copyrighted Work was created by the contribution of at least some minimal degree of creativity. Plaintiff does not assert copyright ownership in the ideas reflected in the non-protectable Excel shortcuts, computer terms, or in the exercise diagrams, but rather claims copyright protection in the expressive compilation, arrangement, selection, and coordination of the non-protectable elements. Final Pretrial Order 3; s*ee Feist Publications*, 499 U.S. at 344 (holding that factual compilations are sufficiently original to be copyrightable if choices as to selection and arrangement of facts are independently made by compiler); *Satava*, 323 F.3d at 811 ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."). Copyright in a compilation "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." 17 U.S.C. § 103(b).

29.     First, contrary to Defendant's assertion, the evidence shows that Plaintiff created the Copyrighted Work independently, that is, she did not copy it from another work. Plaintiff has shown that she engaged in extensive design work over the course of several months to finalize the design of the Copyrighted Work. Ex. 34. There is no indication that Plaintiff consulted designs other than her own for an earlier Linux mousepad while designing the Copyrighted Work, which was finalized in November 2023 and first published in January 2024. Exs. 4, 37. Moreover, Plaintiff has shown that a mousepad design by Amrgik (ASIN B0DGL9M384) that

resembles the Copyrighted Work does not appear to have been offered for sale until October 2024 and, in fact, ASIN B0DGL9M384 may have offered an entirely dissimilar product as late as August 2024. Exs. 39, 44, 51; *see supra,* Section 14.

30.    Second, the Copyrighted Work was created by the contribution of at least a minimal degree creativity. Although the Excel shortcuts and their descriptors are in the public domain, the combination of unprotectable elements is numerous enough and their selection and arrangement original enough that their combination in the Copyrighted Work constitutes an original work of authorship. There are over 270 Excel shortcuts in existence, but Plaintiff selected and included only approximately 150 Excel shortcuts/elements in the Copyrighted Work. Ex. 49. Although those shortcuts can be organized in numerous ways, including across at least 25 possible categories, Plaintiff arranged the 9 shortcuts categories and 2 non-shortcuts categories into 11 distinct categories. Ex. 5.  Moreover, Plaintiff's design choices were primarily aesthetic rather than functional with respect to category selection, special placement, and color-coding. For example, there are not purely functional reasons for grouping "Editing/Selection" into one longer list, placing the "Pivot Table" category in the center-right of the mousepad, dividing the mousepad into 5 columns but having "Useful Excel Tricks" stretch across the centerline, placing the 11 categories in this precise order, and placing 10 exercise diagrams in the center bottom of the mousepad underscored by a punchline. Ex. 5. Creativity is a question of fact and the Court finds that the Copyrighted Work embodies at least a minimal degree of creativity. It exceeds the bare minimum of creativity, subject only to "thin" copyright protection; yet it clearly does not qualify for expansive protection given its status as a compilation setting forth unprotectible information and its commonsense use of tabs and tables to organize the information. *Satava*, 323 F.3d at 812. In the spectrum of protection between "thin" and "broad,"

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 25

the protection afforded the Copyrighted Work remains rather narrow.[6] Nonetheless, regardless of how "thin" or "broad" Plaintiff's copyright protection is, the Accused Work infringed upon the Copyrighted Work. *Feist Publications*, 499 U.S. at 345. The Accused Work is virtually identical to the Copyrighted Work, contains only trivial variations in the public domain elements (e.g., color tones, precise wording), and adds (or subtracts) nothing of aesthetic or functional value. *Cf. N. Coast Indus.*, 972 F.2d at 1033 (describing what constitutes "original").

31. The Court also finds that Defendant copied the Copyrighted Work: (1) Defendant had access to the Copyrighted Work; and (2) Defendant's Accused Work and Plaintiff's Copyrighted Work are so substantially similar as to be virtually identical. *See, e.g.*, *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1018 (9th Cir. 1985); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000); *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1065 (9th Cir. 2016).

32. First, Defendant has admitted to having access to the Copyrighted Work and being inspired by it when creating the Accused Work before finalizing his design in March 2024. Ex. 14 (TAN0051); Ex. 16. Moreover, Defendant instructed ChatGPT to help create a design that employed the exact same category groupings as the Copyrighted Work and a nearly identical number of shortcuts/elements under those categories. Ex. 23 (TAN0107); *see supra,* Section 11.

---

[6] The Court recognizes that in December 2024, in denying Plaintiff's motion for a preliminary injunction, the Court referred to Plaintiff's copyright as being "thin" and protecting only against virtually identical copying. Dkt. 32, at 7–8. At the time, the Court noted, "Plaintiff has provided scant evidence from which the Court may determine if her collection and assemblage of these commonly used Excel shortcuts and terms has been done in a such a way that the Work as a whole constitutes an original work of authorship or that she has contributed original protectable elements to her design of the mousepad which are not already in the public domain." *Id.* at 7. Creativity is a question of fact and the Court is now making a factual determination on a fully developed record.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
- 26

33.     Second, there are substantial similarities between the Accused Work and the Copyrighted Work. Ex. 28. The Court employs a two-part test for determining whether one work is substantially similar to another:

> [A plaintiff] must prove both substantial similarity under the "extrinsic test" and substantial similarity under the "intrinsic test." The "extrinsic test" is an objective comparison of specific expressive elements. The "intrinsic test" is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works.

*Antonick v. Electronic Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016). The extrinsic test is a question of law for the Court. *See Gray v. Hudson*, 28 F.4th 87, 97 (9th Cir. 2022). If the Court determines that the plaintiff has failed to satisfy the extrinsic test, then the infringement claim fails and there is no need to proceed to the intrinsic test. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc); *Corbello v. Valli*, 974 F.3d 965, 974 (9th Cir. 2020); *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 997 (9th Cir. 2025) ("The extrinsic test thus serves to screen out objectively meritless claims, so courts can apply it as a matter of law."). If the extrinsic test is satisfied, the intrinsic test is a matter for the factfinder. *See Corbello*, 974 F.3d at 974; *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994).

34.     With respect to the extrinsic test, the Court finds that Plaintiff has demonstrated substantial similarity. There are substantial similarities between the Copyrighted Work and the Accused Work in (a) categories and structure; (b) quantities of shortcuts within each category; (c) shortcuts/elements within each category; (d) layout, arrangement, and organization; (e) grid structure and table design; (f) shortcut key design; (g) font and text conventions; and (h) overall look and feel. Dkt. 28; *see supra,* Section 12. The aesthetic expression of the compilation of Excel shortcuts, tricks, and formulas embodied in the Copyrighted work is not, as a practical

matter, indispensable or entirely standard in the treatment of presenting these non-protectable elements. *See Frybarger v. Int'l Bus. Machines Corp.,* 812 F.2d 525, 530 (9th Cir. 1987), *Johnson Controls, Inc. v. Control Sys., Inc.,* 886 F.2d 1173, 1175 (9th Cir. 1989); *see also Data E. USA, Inc. v. Epyx, Inc.,* 862 F.2d 204, 209 (9th Cir. 1988). Moreover, if one were to replace the unprotectable text with nonsense language in both works, the Accused Work appears *more* similar rather than less similar than the Copyrighted Work, underscoring how virtually all of Plaintiff's aesthetic layout decisions were mimicked by Defendant's design. *See* Ex. 28.

35.     With respect to the intrinsic test, the Court finds that an ordinary reasonable person would find the Copyrighted Work and the Accused Work to be substantially similar. *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998). If an online consumer were presented with both designs in response to a query for an Excel shortcut mousepad, the works are so strikingly similar that the only distinguishing factor would appear to be price. It is unlikely that an ordinary consumer would scrutinize the images closely enough to discern which commands were differently worded or to distinguish the minimal differences in color hues for the category headings. *See* Ex. 28. Any differences are trivial and are to the actual wording or content of elements entirely within the public domain.

36.     A presumption of copying arises if the plaintiff proves that the defendant had access to the plaintiff's work and that there is a substantial similarity between the original elements of the infringed and alleged infringing works. *Three Boys*, 212 F.3d at 486 ("By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying." (citing *Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 721 (9th Cir. 1976))). The defendant may rebut the presumption through proof of independent creation. *Id.* Defendant is unable to prove by a preponderance of the evidence that he

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
- 28

independently created the Accused Work. On the contrary, it not credible for the Defendant to argue that despite having access to and being inspired by the Copyrighted Work, he engaged in an act of independent creation by then asking ChatGPT to design a mousepad with an prompt referring to shortcut tables using nearly all of the same categories and number of shortcuts under each category. Ex. 23; *see supra*, Section 15. Thereafter, the categories and number of underlying shortcuts in the Accused Work were adjusted by Defendant to gain even greater similarity to the Copyrighted Work. Dkt. 28; *see supra*, Section 15.

37.    To the extent Defendant raises the affirmative defense of fair use, the Court rejects it. Defendant's Accused Work directly competes with the Copyrighted Work on the same online sales platform, the works have the same purpose, the Accused Work is virtually identical to the Copyrighted Work, and the effect of selling the Accused Work is the diminishment of consumers purchasing the Copyrighted Work. *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1157 (9th Cir. 2022); 17 U.S.C. § 107. Defendant has not proven fair use.

38.    The Court finds that Plaintiff has proven by a preponderance of evidence that she is the owner of a valid copyright and that in the Accused Work Defendant copied original expression from the Copyrighted Work. The Court further finds that Defendant has failed to demonstrate independent creation of the Accused Work or fair use. The Court therefore finds that Plaintiff has proven copyright infringement by Defendant. 17 U.S.C. § 501(a)–(b).

39.    Because the Court finds for Plaintiff on her copyright infringement claim, the Court must determine Plaintiff's damages. 17 U.S.C. § 504. Plaintiff is entitled to recover the actual damages suffered as a result of the infringement. *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) (quoting § 504(b)). In addition, Plaintiff is also entitled to recover any profits of Defendant attributable to the infringement and not taken into

account in computing the actual damages. *Id.* The Court may reject a proffered measure of damages if it is too speculative. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985).

40.    The Court finds Plaintiff has offered a measure of actual damages that is too speculative. Plaintiff calculated lost profits according to a diversion model in which each sale made by Defendant represented a diverted sale in whole or in part. Plaintiff's Tr. Br. 30. Plaintiff argues her actual damages amount to approximately $135,000 based on Defendant's sale of 16,194 units of the Accused Work from April 5, 2024, to February 8, 2026, and a diversion rate of 100%. *See supra,* Section 17. Applying a diversion rate of 40% to 70%, Plaintiff estimated lost profits from approximately $54,000 to $94,000. *See* Plaintiff's Tr. Br. 31. Plaintiff provides no evidence to demonstrate which diversion rate should be used aside from conclusory speculation. *See supra,* Section 17.

41.    The Court finds, however, that Plaintiff has been able to demonstrate the amount of Defendant's profits for the period between April 5, 2024, to September 30, 2024. *See supra,* Section 23. Plaintiff has shown that the Accused Work was offered for sale until after this lawsuit was filed on September 24, 2024, and there is substantial agreement by the parties that a modified design was offered at the same ASIN B0D14B9C6V at very least until the end of the month.[7] *Id.*

> As an alternative to actual damages, a prevailing plaintiff in an infringement action is entitled to recover the infringer's profits to the extent they are attributable to the infringement. In establishing the infringer's profits, the plaintiff is required to prove only the defendant's sales; the burden then shifts to the defendant to prove the elements of costs to be deducted from sales in arriving at profit.

---

[7] As noted earlier, at trial Defendant contradicted, without evidentiary support, his pretrial statement that the modified design had taken the place of the Accused Work sometime in September 2024 after this lawsuit was filed. *See supra,* Section 22.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 30

> Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff.

*Frank Music Corp.*, 772 F.2d at 514 (citations omitted). Although Defendant declined to provide any information about his expenses in producing the Accused Work over the relevant period, Plaintiff provided reliable information from Amazon third-party tools regularly used by Plaintiff, Defendant, and Amazon sellers to monitor sales and track profits, and provided Defendant's sales numbers and reasonable expenses based upon Plaintiff's own experience as an Amazon seller. Plaintiff has demonstrated that Defendant's profits from selling the Accused Work from April 5, 2024, to September 30, 2024 amount to approximately $6,912. Defendant has not shown any other reasonable expenses or that any additional amount should be deducted as not related to the sales of the Accused Work. The Court therefore awards Plaintiff $6,912, as Defendant's profits that are attributable to the infringement and are not taken into account in computing the actual damages.

42.    Defendant argues that Plaintiff is not entitled to recovering statutory damages and attorney's fees under 17 U.S.C. § 412. Defendant's Tr. Br. 7–9. The Court need not address this issue because Plaintiff does not seek statutory damages and attorney's fees related to the Accused Work.

43.    Plaintiff also seeks a permanent injunction that prohibits Defendant from continuing to make, advertise, or offer for sale any copies or derivatives of the Copyrighted Work, including but not limited to the Accused Work and the Modified Work. Under 17 U.S.C. § 502(a), the Court is empowered to grant a permanent injunction "as it may deem reasonable to prevent or restrain infringement of a copyright." A plaintiff seeking a permanent injunction must demonstrate four factors:

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 31

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011) (holding that the standard set forth in *eBay Inc.* for injunctive relief in patent cases applies with equal force to copyright actions). The Court finds that Plaintiff has demonstrated that a permanent injunction should be granted to restrain Defendant from infringing on the Copyrighted Work.

44. First, Plaintiff has demonstrated that she has suffered irreparable harm. Although Defendant asserts that he has ceased selling the Accused Work, he has continued to sell an Excel shortcuts mousepad with the same ASIN number as the Accused Work. That is, Defendant continues to sell a product that is a modified version of the Accused Work, which here has been adjudged to have infringed on Plaintiff's copyrighted work. Should an injunction not be granted, Plaintiff's victory in this copyright infringement case would be Pyrrhic: while the Accused Work was sold online for 4 to 5 months, the Modified Work or modified designs based on the Accused Work have been on sale for 17 months and counting. Moreover, the threat of the loss of prospective customers, goodwill, or reputation may support a finding of irreparable harm, so long as it is not too speculative. *See, e.g.*, *Bean v. Pearson Educ., Inc.*, 2011 WL 1211684 (D. Ariz. Mar. 30, 2011). There is nothing speculative about the evidence that Defendant's sales of the Modified Work have far outstripped those of the Accused Work, including the 1,708 units sold of the Modified Work in March 2025 alone outstripping the 1,521 units sold of the Accused Work during its availability from May to September of 2024. Ex. 41. Defendant cited sales figures from the Amazon third-party tools Helium 10 and Xiyouhaoci to confirm that during the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
- 32

2024 period in which the Accused Work was removed, sales of Plaintiff's Copyrighted Work increased significantly, demonstrating that the Accused Work had been drawing customers away from Plaintiff's product. Ex. 64. Similarly, Defendant argues that Plaintiff was able to enhance her market reputation by bringing infringement actions: "This perceived vigilance can enhance [Plaintiff's] reputation within its consumer base, making customers more likely to trust and prefer the Plaintiff's products over those of competitors." Ex. 64. A corollary of Defendant's admission about Plaintiff's vigilant enforcement of her copyright enhancing her reputation is that the absence of Plaintiff's ability to enforce ongoing violations of her copyright would diminish Plaintiff's reputation and credibility among consumers and/or Amazon. As discussed earlier, Amazon reinstated the Accused Work once Defendant filed a DMCA counter-notification and has rejected Plaintiff's reasons for removing Defendant's listing. Ex. 30; *see supra, S*ection 5.

45.    Second, Plaintiff has demonstrated that remedies available at law, such as monetary damages, are inadequate to compensate for Defendant's infringement of the Copyrighted Work. In moving to participate remotely and for a court-appointed Chinese interpreter at the Court's expense, Defendant attested to "severe economic hardship." Dkts. 116, 122. Defendant filed a declaration stating that he had $750 in his bank accounts, had take-home monthly earnings of $1,300 per month, and had monthly expenses of about $1,505. Dkt. 122-1, at 2–3. Defendant also filed a declaration stating that he did not have the financial means to pay thousands of dollars for a plane flight from China to the United States and for meals and accommodations for 5-6 nights for a trial in Seattle. Dkt. 116-1. Defendant thus has made it clear that he would be unable to satisfy nearly any monetary award awarded to Plaintiff for Defendant's copyright infringement. Awarding Plaintiff monetary damages would be inadequate

to compensate for Defendant's infringement because Defendant does not appear to have the means to pay monetary damages.

46.    Third, considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted. Defendant should not be permitted to infringe Plaintiff's valid copyright and suffers no hardship from ceasing such infringement. On the other hand, Plaintiff suffers financially from violations of the Copyrighted Work with no likelihood of being compensated for her financial losses or labor expended to enforce her valid copyright.

47.    Fourth, the public interest is not disserved by a permanent injunction. Although the current trial has determined only that the Accused Work violated the Copyrighted Work, the public interest is not disserved by Plaintiff's ability to enforce her copyright against Defendant for modified designs that also violate the Copyrighted Work. Should any modified designs infringe upon Plaintiff's copyright, Defendant appears to concede that he would be unable to pay any damages, whether statutory or actual, that would accrue from a separate lawsuit. Therefore, judicial efficiency is served by Plaintiff's ability to bring a civil contempt motion within the current case to stop any ongoing infringement of her copyright immediately.

48.    The Court permanently enjoins Defendant from making, advertising, or offering for sale any copies or derivatives of the Copyrighted Work, which includes any works substantially similar to the Copyrighted Work or the Accused Work. Although, based on Plaintiff's election to do so, the trial in this matter specifically addressed whether Defendant's Accused Work infringed on the Copyrighted Work, Defendant is enjoined from making, advertising, or offering for sale any copies, designs, or derivatives that infringe upon the Copyrighted Work, i.e., any works that are substantially similar to the Copyrighted Work or the Accused Work.

49.     It is left for the *pro se* parties to determine whether Defendant's liability for copyright infringement based on the Accused Work and the permanent injunction against other works that infringe the Copyrighted Work might occasion a civil motion for contempt in the current lawsuit to cease ongoing infringement and/or a separate lawsuit to determine liability for the modified designs and to recover actual or statutory damages for past activity. Defendant is forewarned that any modified designs that are substantially similar to the Copyrighted Work or the Accused Work clearly violate the permanent injunction.

**CONCLUSION**

The Court finds that Defendant's Accused Work infringed the valid copyright for Plaintiff's Copyrighted Work. 17 U.S.C. § 501. As an alternative to actual damages, Plaintiff is awarded Defendant's profits of $6,912. Defendant is permanently enjoined from making, advertising, or offering for sale any copies or derivatives of the Copyrighted Work, including any works substantially similar to the Copyrighted Work or the Accused Work.

DATED this 20th day of May, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW
- 35